HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHIBIKE NWABUDE,

        Plaintiff,

      v.

FIRST AMERICAN PROPERTY AND
CASUALTY INSURANCE COMPANY;

        Defendant.

CASE NO. 2:24-cv-01434-RAJ

ORDER ON MOTION FOR
SUMMARY JUDGMENT

## I.      INTRODUCTION

THIS MATTER comes before the Court on Defendant First American Property and Casualty Insurance Company's ("First American" or "Defendant") Motion for Summary Judgment. Dkt. # 17. Plaintiff Chibike Nwabude, proceeding *pro se* in this action, filed a Response to Defendant's Motion. Dkt. #19. Defendant subsequently filed a Reply to Plaintiff's Response. Dkt. # 21.

For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion.

## II.      BACKGROUND

This action was originally filed by Plaintiff in Snohomish County Superior Court on July 31, 2024, Cause No. 24-2-05904-31, and removed to this Court by Defendant on

ORDER – 1

September 10, 2024, on the basis of diversity jurisdiction. Dkt. # 1 at ¶ 15 (citing 28 U.S.C. § 1332).

Plaintiff is a resident of Lake Stevens, Washington. Dkt. # 17 at 2. Defendant is an insurance company based in California and licensed to conduct business in the State of Washington. Dkt. # 1 at ¶ 4. Plaintiff is the policyholder of a homeowner's insurance policy issued by Defendant, Policy No. WAPH119575 (the "Policy," Dkt. # 18-2). *Id.* ¶ 6.

On November 11, 2021, Plaintiff was involved in an accident at his Lake Stevens home which resulted in flooding and extensive water damage. Dkt. # 17 at 2. Plaintiff submitted several insurance claims to Defendant seeking coverage for the damage to the dwelling and various items of Plaintiff's personal property, as well as for hotel accommodations during remediation. *Id.* First American accepted coverage for some of the claims submitted by Plaintiff, and issued several payments under the following sections of the Policy: Coverage A – Dwelling ($30,079.21); Coverage C – Personal Property ($38,652.39); and Coverage D – Loss of Use ($11,090.42). *Id.* at 2–3.

At the time of the incident giving rise to the water loss, Plaintiff owned a collection of DVDs reflecting his recordings of personal and family events, television programming, and musical albums. Dkt. # 17 at 3. Plaintiff submits that the DVDs were lying on the floor of his bedroom and accordingly became submerged when that area of the dwelling flooded, destroying the recordings stored on the discs. *Id.* On February 28, 2023, Plaintiff submitted a list of damaged personal property to Defendant, claiming $36,150.00 for damage to 30 discs in the DVD collection. *Id.* In support of his claim, Plaintiff supplied Defendant with the following breakdown of the recordings:

> Burial Ceremonies of Father, Mother & Sister, $3,300.00 each, Total (3) $10,500.00;
> Wedding Ceremonies of Brother & Sister, $2,600.00 each, Total (2) $5,200.00;
> Father's & Mother's Visits, respectively, $1,700.00 each, Total (2) $3,400.00;
> Insured's Graduation Ceremony Total (1) $2,100.00;
> Remaining 22 Recordings cost $700-$900 each to make.

ORDER – 2

Dkt. # 1-2 at 35; Dkt. # 17 at 3.

First American accepted coverage of the damaged DVDs as covered personal property under the Policy, but rejected Plaintiff's claimed damages of $36,150.00. Dkt. # 17 at 3. Instead, Defendant "determined the amount of damages on the DVDs based on the actual cash value of $147.04, which covered the cost of 30 prerecorded DVDs at $5.99 each with applicable tax and depreciation." *Id.* Subsequently, Plaintiff requested $1,500.00 for each DVD, pursuant to the following Special Limits of Liability section of the Policy:

> **SECTION I – PROPERTY COVERAGES**
> …
> C. Coverage C – Personal Property
> …
> **3. Special Limits of Liability**
>
> The special limit for each category shown below is the total limit for each loss for all property in the category. These special limits do not increase the Coverage C limit of liability.
> …
> b. $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.
>
> *This limit includes the cost to research, replace or restore the information from the lost or damaged material.*

Dkt. # 18-2 at 17 (italics added).

Citing the above-italicized language from the Policy, Defendant requested that Plaintiff provide information on "the estimated cost to re-record the DVDs." Dkt. # 17 at 4. First American submits that Plaintiff "failed to provide any information as to 'the cost to research, replace or restore the information from the lost or damaged material' as required by the Policy." *Id.* Accordingly, Defendant sent a letter to Plaintiff on April 25, 2023, informing him that "no additional payment would be made on the DVDs unless he provided an estimate with information on the cost to re-record or replace the recordings."

ORDER – 3

*Id.*  Plaintiff explained in response that he could not determine the cost to re-record the DVDs because they were irreplaceable.  *Id.*

On May 11, 2023, Plaintiff filed a complaint with the Washington State Office of Insurance Commissioner (OIC) in connection with his claim for the DVDs.  *Id.* at 5.  The OIC sent a written request to Defendant seeking a response to Plaintiff's complaint.  Dkt. # 1-2 at 33–34.  In its response to the OIC, Defendant reiterated that because Plaintiff was "unable to provide [First American] with an estimate to re-produce the recordings, nor provide information to justify the claimed amounts," Defendant owed Plaintiff "no additional payment for the DVDs."  *Id.* at 35–36.  On June 22, 2023, Plaintiff sent an e-mail to Defendant asserting that the total number of damaged DVDs was 54, rather than 30 as originally contemplated, and revising his claimed damages down to $31,500.00.  Dkt. # 1-2 at 41.  In a subsequent response letter to the OIC, Defendant restated its basis for denial of the claimed damages, citing the Special Limits of Liability provision of the Policy, as well as the provision requiring insured parties to cooperate with First American following a loss:

**SECTION I – CONDITIONS**

…

**B. Duties After Loss**
In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

…

   5. Cooperate with us in the investigation of a claim;

   6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

   7. As often as we reasonably require:

      a. Show the damaged property;

      b. Provide us with records and documents we request and permit us to

ORDER – 4

> make copies; and
>
> c. Submit to examination under oath, while not in the presence of another "insured", and sign the same.

Dkt. # 1-2 at 41–42 (citing Dkt. # 18-2 at 28–29). In conclusion, Defendant clarified that should Plaintiff "submit an estimate with detail representing the cost to research, replace or restore the information contained in the DVD recordings, First American will agree to consider the new information." Dkt. # 1-2 at 42.

On July 31, 2024, Plaintiff commenced this action, filing a complaint against Defendant in Washington state court seeking compensatory damages, punitive damages, and "judgment in the amount of $31,000.00 plus interests and costs." Dkt. # 1-2 at 5. Defendant subsequently removed the action to this Court. Dkt. # 1. Thereafter, counsel for Defendant deposed Plaintiff. During Plaintiff's deposition, he maintained that the destroyed recordings could never be restored, replaced or recreated, and asserted that Defendant owes him a "reasonable" reimbursement for the loss to the DVDs, in excess of the $147.04 in "actual cash value" as calculated by First American. Dkt. # 18-1 at 48, 50-51.

### III.  LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the

ORDER – 5

opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).

However, the court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

In insurance coverage cases, summary judgment is warranted when "(1) there is no dispute about the facts, and (2) coverage depends solely on the language of the insurance policy." *Stouffer & Knight v. Cont'l Co.*, 96 Wn. App. 741, 747, 982 P.2d 105 (1999).

## IV. DISCUSSION

Defendant First American moves for summary judgment, contending that "no material facts are disputed and summary judgment hinges on the plain language of the Policy." Dkt. # 17 at 9–10. Accordingly, and because the Policy is "clear and unambiguous," Defendant contends that summary judgment is appropriate based on the record in this action. Specifically, Defendant submits that there are no disputes of material fact that (a) First American accepted coverage of the damaged DVDs; (b) the Policy precludes Plaintiff's sought recovery of $31,000 for the DVDs; and (c) Plaintiff has shown no basis for additional payment on his DVDs. Dkt. # 17 at 10–12. The Court considers

ORDER – 6

each of these arguments in turn.

## A.    First American Accepted Coverage of the Damaged DVDs

Plaintiff seeks punitive damages on the basis of his allegation that Defendant "intentionally did not disclose" the fact that Plaintiff's damaged DVDs were covered by the Policy.  Dkt. # 1-2 at 5.  Defendant contends, however, that no issue of material fact exists as to First American's acceptance of coverage of the DVDs.  Dkt. # 17 at 10.

The Court agrees with Defendant.  The evidence demonstrates that First American has openly accepted coverage of the DVD collection as personal records pursuant to the Policy, as Plaintiff acknowledged during his deposition.  Dkt. # 18-1 at 44 (Q: "Do you agree with me that First American agreed that there was coverage for your DVDs, right?" A: "Yeah."  Q: "They said it was covered.  But they were just going to pay you $5.99 per DVD, right?" A: "Yeah.").  Plaintiff does not offer any evidence rebutting Defendant's argument that punitive damages are unavailable in light of First American's acceptance of coverage.  Accordingly, the Court **GRANTS** Defendant's Motion on Plaintiff's request for punitive damages, as set forth in Point No. 2 of Plaintiff's Prayer for Relief.  Dkt. # 1-2 at 5.

## B.    Plaintiff Is Not Entitled to Damages of $31,000 Under the Policy

Defendant also contends that there is no dispute of material fact as to Plaintiff's claim for $31,500.00 under the terms of the Policy.  The Court agrees.  The Policy limits damages for all property falling into specified categories of personal property, including personal records:

> **3. Special Limits of Liability**
>
> The ***special limit for each category*** shown below is the total limit for each loss for ***all property in the category***. These special limits do not increase the Coverage C limit of liability.
> …
> b. $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, ***personal records***, passports, tickets and stamps. This dollar limit applies to these categories

ORDER – 7

regardless of the medium (such as paper or computer software) on which the material exists.

Dkt. # 18-2 at 17 (emphasis added).

The DVD collection is property comprising the category of "personal records," as contemplated by the Policy. Accordingly, applying the "plain and unambiguous" terms of the Policy "as written," there can be no genuine dispute that Plaintiff's maximum potential recovery for his damaged DVD collection is $1,500.00. *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wash. 2d 165, 171 (2005). Accordingly, the Court **GRANTS** Defendant's Motion on Plaintiff's request for "judgment in the amount of $31,000," as set forth in Point No. 3 of Plaintiff's Prayer for Relief. Dkt. # 1-2 at 5.

**C.    A Dispute of Material Fact Exists as to the Value of the DVDs**

Finally, Defendant moves for summary judgment as to Plaintiff's claim for damages in excess of the payments already offered by First American, arguing that Plaintiff "failed to show any basis for additional payment on his DVDs." Dkt. # 17 at 11. The Court disagrees.

Defendant contends that, "[i]n accordance with the terms of the Policy," First American accepted coverage for the damaged DVDs and "determined the amount of damages based on the actual cash value of $147.04, which covered the cost of 30 prerecorded DVDs at $5.99 each with applicable tax and depreciation." Dkt. # 17 at 11–12. Therefore, according to Defendant, "[t]he facts are undisputed." Dkt. # 17 at 12. While Defendant may be correct that the foregoing represents an accurate retelling of its handling of Plaintiff's coverage claim, it does not follow that there is no genuine dispute of material fact with respect to the *value of the DVDs*. On the contrary, the evidence submitted by the parties clearly highlights a significant and persisting dispute as to this material factual issue.

Under Washington law (which Defendant acknowledges applies in this action[1]), the

---

[1] Dkt. # 17 at 9 (citing *Paulson v. City of San Diego*, 294 F.3d 1124, 1128 (9th Cir. 2002).

ORDER – 8

standard for recovery of destroyed personal property is as follows: (1) if the destroyed personal property may have had market value, the measure of damages is the market value; (2) if the destroyed property has no market value but can be replaced or reproduced, then the measure is the cost of replacement or reproduction; and (3) if the destroyed property has no market value and cannot be replaced or reproduced, then the value to the owner is the proper measure of damages. *Mieske v. Bartell Drug Co.,* 92 Wash. 2d 40, 43–44, (1979) (citing *McCurdy v. Union Pac. R.R.*, 68 Wash. 2d 457 (1966)).

As the movant for summary judgment, Defendant "bears the burden of showing an absence of a factual dispute with respect to the measure of damages." *Scottsdale Ins. Co. v. Ford Motor Co.*, No. C10-373 MJP, 2011 WL 2292328, *3 (W.D. Wash. June 8, 2011). Because Plaintiff must ultimately prove damages at trial, Defendant adequately shifts the burden by "simply point[ing] out through argument—the absence of evidence to support [the plaintiff's] claim." *Id.* (citing *Deveraux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2011)). First American has done so here by arguing in its Motion that Plaintiff "failed to show any basis for additional payment on his DVDs" beyond the cash value of the discs, based on the "undisputed" fact that Plaintiff "never provided any information to First American" regarding the cost to research, replace, or restore the recordings. Dkt. # 17 at 11-12.

With the burden shifted, Plaintiff offers evidence relevant to the impossibility of restoring the recordings—and, by extension, the difficulty of valuing the DVDs on this basis. *See* Dkt. # 19 at 5 (citing deposition testimony reflecting that some of the destroyed DVDs contained recordings of separate family members' burials, and adding: "Does Plaintiff have to resurrect the dead again . . . in order to recreate and restore the videos of the damaged DVD[s]?"). Plaintiff thereby "has met [his] burden at the summary judgment stage of showing the destroyed property" is irreplaceable and that the measure of damages may be the actual value to the owner, rather than the market value of the discs. *Scottsdale*, 2011 WL 2292328 at *3 (denying defendant's motion for summary judgment after

ORDER – 9

concluding that the plaintiff adequately identified a genuine dispute as to the value of the destroyed property by submitting a declaration attesting to the difficulty of replacing the property).

Plaintiff's rebuttal is consistent with Washington law. Notwithstanding First American's repeated requests for restoration or replacement costs, Plaintiff's explanation that the DVDs were irreplaceable is a legitimate explanation of the difficulty in valuing this kind of destroyed personal property. Nor is the "actual cash value" of the DVDs, as determined by First American, a legitimate measure of recovery under these circumstances. As in *Mieske*, here, Plaintiff "lost not merely film able to capture images by exposure but rather [discs] upon which was recorded a multitude of [recordings] depicting many significant events" in his life. *Mieske*, 92 Wash. 2d at 44. Awarding Plaintiff the value of 30 prerecorded DVDs is "hardly a replacement of the [DVD recordings] which [he] had recorded over the years." *Id.*

Accordingly, here, the third category contemplated in *Mieske* and *McCurdy* reflects the appropriate measure of damages: in other words, the destroyed property at issue "has no market value and cannot be replaced or reproduced." *Id.* Under these circumstances, "the measure of damages is to be determined by the value to the owner, often referred to as the intrinsic value of the property." *Mieske*, 92 Wash. 2d at 44. The record in this case reflects that Defendant, in denying recovery beyond the cash value of the prerecorded DVDs, has in at least one instance stated that it "understand[s] the sentimental value of the recorded information," but nonetheless "no additional payment for the DVDs is owed" without information germane to the cost to reproduce the recordings. Dkt. # 1-2 at 35–36. While it is true that "compensation for sentimental or fanciful values" associated with damaged or destroyed property is not allowed, intrinsic value to the owner is not coextensive with sentimental value. *Mieske*, 92 Wash. 2d at 45. Rather, the "type of sentiment which is not compensable is that which relates to 'indulging in feeling to an unwarranted extent' or being 'affectedly or mawkishly emotional . . .'" *Id.* (citing

ORDER – 10

Webster's Third New International Dictionary (1963)). Plaintiff, by citing the irreplaceability and personal significance of the lost recordings, is not demanding compensation for the "sentimental" value of the recordings. Rather, by requesting a "reasonable value for the damaged DVDs" in order to be "compensated adequately" for the loss thereof, Plaintiff is in effect asking for the intrinsic or actual value of this irreplaceable destroyed property, consistent with applicable law. Dkt. # 19 at 6, 12.

The Court acknowledges that the actual or intrinsic value to Plaintiff of the destroyed DVDs may be "difficult to ascertain and measure." *Mieske*, 92 Wash. 2d at 44. However, "difficulty of assessment is not cause to deny damages to a plaintiff whose property has no market value and cannot be replaced or reproduced." *Id.* (citing *Jacqueline's Washington, Inc. v. Mercantile Stores Co.*, 80 Wash. 2d 784, 498 P.2d 870 (1972)). While the value to the owner "encompasses a subjective element," *id.* at 45, a factfinder could very well find that the intrinsic value of the irreplaceable DVDs to the Plaintiff, exclusive of any noncompensable "sentimental" value, exceeds the $147.04 quoted by First American.[2] As such, a dispute of material fact as to the value of the DVDs exists such that disposing of Plaintiff's claim at the summary judgment stage is inappropriate. Accordingly, the Court **DENIES** Defendant's Motion on Plaintiff's request for "compensatory damages in an amount to be proven" at a trial by jury, as set forth in Point Nos. 1 and 4 of Plaintiff's Prayer for Relief. Dkt. # 1-2 at 5.

---

[2] This finding is not disturbed by the language in the Policy indicating that the $1,500.00 limit of liability for each category of specified personal property, including personal records, "includes the cost to research, replace or restore the information from the lost or damaged material." Dkt. # 17 at 12 (citing Dkt. # 18-2 at 17). This provision merely clarifies that the $1,500.00 limit is *inclusive* of any costs of restoration or reproduction of property (or associated research). It does not, however, impose a condition barring recovery for personal property which *cannot* be replaced or restored.

ORDER – 11

1

## V.   CONCLUSION

2    Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART**

3   Defendant First American's Motion for Summary Judgment.  Dkt. # 17.

4

5    Dated this 21st day of October, 2025.

6

7

8   The Honorable Richard A. Jones
United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   ORDER – 12